BENJAMIN LEBOWITZ, as Assignee of FANNIE LEBOWITZ, Plaintiff, v. BOWERY SAVINGS BANK and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Second District, May 21, 1935.

*M. Joel Berger*, for the plaintiff.

*Cadwalader, Wickersham & Taft* [*Robertson Honey, Jr.*, of counsel], for the defendant Bowery Savings Bank.

*Samuel Seidenfeld*, for the defendant Solomon Stern.

LEWIS, DAVID C., J. On the 30th day of October, 1934, Solomon Stern, one of the defendants above named, duly entered a judgment against Fannie Stern (*née* Fannie Lebowitz), the assignor of this plaintiff.

On December 20, 1934, he instituted supplementary proceedings upon said judgment, and on said day a third party order was duly issued out of the City Court directed to the Bowery Savings Bank, and containing the standard injunctive provisions.

Apparently because of the difference in the name of the depositor (Fannie Stern — not Lebowitz), and through other inadvertence, a substantial portion of the bank account was withdrawn.

Repeated motions were made by the judgment creditor in the course of the third party proceedings, and ultimately on the 19th day of March, 1935, upon due notice to the judgment debtor, an order was entered as follows:

" *Ordered* that The Bowery Savings Bank of 130 Bowery, New York City, pay over to Solomon Stern, the judgment creditor herein out of the debt owed by it to Fanny Stern, nee Fanny Lebowitz, the judgment debtor herein, pursuant to section 792 of the Civil Practice Act, the sum of Sixty two ($62) dollars, with interest thereon from the 30th day of October, 1934, up to the date of such payment, not exceeding, however, the amount of the debt owed by The Bowery Savings Bank to Fanny Stern, nee Fanny Lebowitz, amounting to the sum of Seventy five ($75.00) dollars, subject, however, to the stay hereinafter set forth, and it is further

" *Ordered* that the clerk of this Court docket this order as a judgment and that the same be enforceable as such, subject, however, to the stay hereinafter set forth, and it is further

" *Ordered* that compliance with the aforegoing orders shall in all respects be stayed pending the determination of the action instituted against The Bowery Savings Bank, in the Municipal Court of the City of New York, Borough of Manhattan, Second District,

entitled ' Benjamin Lebowitz, as assignee of Fannie Lebowitz, Plaintiff, against Bowery Savings Bank, Defendant.' "

It is claimed that on January 11, 1935, the said Fannie Stern (*née* Lebowitz) assigned the said Bowery Savings Bank account to her uncle, Benjamin Lebowitz, the plaintiff herein; and that Benjamin Lebowitz demanded the said account from the bank.

It might be added that the judgment creditor has sought to examine Fannie Lebowitz on this alleged assignment; that a subpœna was duly served, but she refused to recognize the same; that an order to punish her for contempt was duly served and she again defaulted; and has been found in contempt. This record does not suggest her good faith, nor does the evidentiary matter presented to the court create an inference that the assignee is free of a guilty conscience.

On the 1st day of February, 1935, upon the refusal of the bank to pay, this action was commenced. And on the 22d day of April, 1935, Solomon Stern, the said judgment creditor, was made a party to this present action.

The plaintiff rests his right to recover on the assignment, and the defendants set up the foregoing facts by way of defense.

The plaintiff claims this court must rule that a judgment debtor may deliberately transfer his bank account to a near relative (after the diligent judgment creditor has promptly instituted supplementary proceedings via the statutory third party order on the bank), and thereby put the bank account beyond the reach of the judgment creditor; and that notwithstanding the pending third party proceeding and the restraining order, that the bank depositary of the judgment debtor must then pay the account to the assignee.

The statement of the proposition sounds alarm and shocks the conscience.

The supplementary proceedings were instituted before the alleged assignment ever came into being and continued alive after the assignment; they never lapsed. Supplementary proceedings are not conclusively deemed ended until the entry of a proper order, and the restraining mandate is not without significance.

" The injunctive order was not abandoned and made nugatory by the closing of the examination. Section 802 of the Civil Practice Act specifically indicates the manner in which proceedings supplementary to the execution may be discontinued or dismissed. * * * [headnote].

" These orders in supplementary proceedings are not perfunctory; they are solemn directions of the court; they mean what they say. They cannot be ignored or treated casually. They must be obeyed. Willful disobedience will not be condoned or winked at or accepted

as a matter of course. The notion is too prevalent that these orders may, with impunity, be consigned to the waste basket." (*Ace Mail Advertising, Inc.*, v. *Newgold*, 150 Misc. 320, at p. 322.)

"The case just adverted to is not controlling in this proceeding. Here the chamberlain was enjoined from paying out the money by orders which recite that it appeared to the satisfaction of the justices who issued them that the chamberlain had in his possession personal property of defendant exceeding ten dollars in value." (*Matter of Rothschild* v. *Gould*, 84 App. Div. 196, at p. 198.)

And in the instant case not only do we have the ordinary injunctive provisions of a third party order, but in addition the mandate of the City Court directing payment, all of which are sought to be rendered abortive by the acts and derelictions of the judgment debtor.

The plaintiff insists that through this post-judgment assignment he secured a transfer of the unincumbered legal title to the deposit out of the judgment debtor into himself; that the judgment creditor's lien upon or claim to the deposit was thereby nullified; that after this assignment the judgment debtor owned nothing; that the City Court was, therefore, powerless to direct payment to the judgment creditor, and that now the judgment creditor can collect nothing.

The plaintiff must imagine that old Dame Justice suffers from a fickle heart and a weak will to try and woo her with such pleas. This court abruptly rejects such a proposal. It will not be wedded to such a false bride.

Indeed, the plaintiff does not even specifically pose as an innocent *bona fide* assignee for value. Yet he demands that this court accord to him greater rights and privileges than were he a *bona fide* holder of the judgment debtor's check drawn on this bank. The plaintiff overlooks the fact that by the supplementary proceedings this vigilant judgment creditor secured a lien upon the bank account; that upon the appointment of a receiver, the receiver would become vested with the property possessed by the judgment debtor as of the time of the commencement of the supplementary proceedings. (*Collins* v. *Connelly*, 125 Misc. 871, at p. 875; Civ. Prac. Act, § 810.)

And is it not the law of this State that this *bona fide* lien duly obtained by the judgment creditor is to be treated at least on a parity with the subsequent suspicious assignment of the plaintiff, and that the lien, being prior in time to the assignment, must prevail?

"In *Muir* v. *Schenck* (3 Hill, 228), it was held that as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, though he had given no notice to either the subsequent assignees or

the debtor, *and the question between a previous assignee and a subsequent attaching creditor was considered the same in principle as between conflicting assignees."* (*Williams* v. *Ingersoll*, 89 N. Y. 508, at p. 523.)

Enlightening language is contained in a Court of Appeals decision: " If the proceedings instituted by the creditor, whom the plaintiff represents, had been abandoned, the liens would have had priority. But not having been abandoned, and the equitable lien existing when the liens were filed having been converted into a legal title as of a time anterior to the filing of the liens, the right to the debt, as between the plaintiff and the lienors, vested in the former. The plaintiff, we think, stands in as good a position at least as if prior to the filing of the liens the contractor had, in good faith, assigned his claim against the defendant to the creditor in the supplementary proceedings, as security for his debt. The assignee, under such an assignment, according to the general current of authorities, would take precedence over lienors under liens subsequently filed." (*McCorkle* v. *Herrman*, 117 N. Y. 297, at p. 305.) (See, also, *Rosen* v. *Lipshitz*, 149 Misc. 144; *Matter of First National Bank of Elmira* v. *Lovell*, 139 id. 891.)

Courts do not encourage transfers that put property beyond the reach of the pursuing creditor. (*Hart* v. *Clarke & Co.*, 194 N. Y. 403, at p. 409; *Rinchey* v. *Stryker*, 28 id. 45.)

To secure a footing for his claim, the plaintiff must first prove himself a purchaser in good faith; otherwise his claim can have no standing. This burden rests on the plaintiff. For obvious reasons the plaintiff does not even plead or pretend to be a purchaser in good faith; no less undertake to prove it. And consequently there is no need for the defendant to disprove it.

" ' When a conveyance is said to be void against creditors, the reference is to such parties, when clothed with their judgments and executions, or such other titles as the law has provided for the collection of debts.' " (*Rinchey* v. *Stryker, supra*, quoting from *Van Heusen* v. *Radcliff*, 17 N. Y. 580, at p. 584.)

The only judicial support offered by the plaintiff consists of two citations (*Tolk* v. *Corn Exchange Bank Trust Co.*, 154 Misc. 296, citing *Starkman* v. *Kelly*, tried in the Ninth District Municipal Court, Borough of Manhattan, in June, 1934; affd. by Appellate Term, First Department [N. Y. L. J. Jan. 18, 1935]). But I cannot find these citations convincing or conclusive. Aside from other distinctive features, both these cases dealt with corporate judgment debtors. The case at bar involves an individual judgment debtor. The Court of Appeals reminds us that there is a marked difference between the rights and remedies available against an individual

judgment debtor and those available against a corporate judgment creditor in supplementary proceedings.

"A judgment creditor may maintain proceedings supplementary to execution against a corporate judgment debtor, but no receiver may be appointed in such proceedings for his benefit. It is contrary to the policy of our law to appoint a receiver of the property of a domestic corporation *for the preferential advantage of a vigilant judgment creditor.*" (Italics mine.) (*Matter of Delaney*, 256 N. Y. 315, at p. 318.)

To sustain the plaintiff's cause of action is tantamount to holding that by the tactics here employed the judgment debtor would thwart the very purposes of section 792 *et seq.* of the Civil Practice Act and compel resort to costly and circuitous proceedings to collect a small judgment. Between scrapping the statutory structure and maintaining a respect for common justice, there is no judicial alternative.

"And if by the application of this rule fraudulent purchasers should occasionally be beaten by persons, who subsequently fail to establish their alleged debts in their actions against their debtors, the only result would be that some concoctors of frauds would be punished by the wrong persons. That is all." (*Rinchey* v. *Stryker*, *supra*, at p. 52.)

In this hour of the demand for simplified and speedy procedure, the history of this litigation presents a sad commentary. It is time to write finis.

The motion of the Bowery Savings Bank for summary judgment dismissing the complaint of the plaintiff herein is granted, and the cross-motion of the plaintiff for summary judgment in his favor is denied, with ten dollars costs.